## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **B.W.-1, B.W.-2, M.M-1, M.M.-2, L.L.-1, and L.L.-2**

**No. 18-0199** (Roane County 17-JA-30, 31, 32, 33, 34, and 35)

**FILED**

**October 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother R.L., by counsel SaraBeth Jett Griesacker, appeals the Circuit Court of Roane County's February 2, 2018, order terminating her parental rights to B.W.-1, B.W.-2, M.M.-1, M.M.-2, L.L.-1, and L.L.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Michael W. Asbury Jr, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her an improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2017, the DHHR filed a petition alleging that petitioner left the children alone without any adult supervision and without a way to contact her in case of an emergency. The DHHR further alleged that the home was in a deplorable condition with rotting food, garbage, and clothing strewn throughout and that the amount of clutter rendered the home uninhabitable. According to the DHHR, the oldest child, B.W.-1, indicated that he was responsible for walking to the store to purchase food and for caring for the youngest children. The DHHR alleged that, as punishment, petitioner required B.W.-1 and B.W.-2 to sit outside past midnight and told the children that, if the DHHR became involved in their lives, that they would "separate them and it would be hell." Despite this, the DHHR alleged that the children indicated they wanted to be

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because some of the children share the same initials, we refer to those children as B.W.-1, B.W.-2, M.M.-1, M.M.-2, L.L.-1 and L.L.-2.

taken from petitioner's custody. The circuit court held a preliminary hearing and ultimately found that imminent danger existed to the children while in petitioner's care.

The circuit court held an adjudicatory hearing in July of 2017 and noted the previous in camera testimony of B.W.-1 and B.W.-2. Those children's testimony included that most days when they returned home from school, petitioner would leave and they would be responsible for the younger children. The children would have no way to reach petitioner and would not return until after midnight. Additionally, both B.W.-1 and B.W.-2 testified that their mother would become angry and violent at times. According to the children, petitioner would strike them hard enough to leave bruises and then keep them home from school so the bruises would not be noticed. B.W.-1 testified that petitioner threatened to put a gun to his head on one occasion. B.W.-2 testified as to a scene where petitioner shoved him to the ground, put his head to the floor, and told him "you're lucky if I don't kill you." Neither child desired to visit with petitioner.

A DHHR worker presented photographs of the condition of the home and testified that the children were filthy and very hungry when removed. In the worker's opinion, the home's condition rendered it unsafe for children. Petitioner also testified and identified the photographs of her home. Petitioner agreed that the photographs accurately depicted her home on the day of the removal, but explained that the condition of her home that day was unusual. Petitioner denied that she left the children for significant periods of time without adult supervision or that the children had to walk to the store to buy food. According to petitioner, the case was a "set up" and the children had been brainwashed by their grandmother. Petitioner's adult son, B.W.-3, testified that he typically provided care and supervision for the younger children while petitioner was gone. However, B.W.-3 admitted that he was staying at a friend's house for a few days before the removal. Ultimately, the circuit court adjudicated petitioner as an abusing parent and the children as abused and neglected children.

In January of 2018, the DHHR moved to terminate petitioner's parental rights on the basis that she tested positive for controlled substances, missed multiple drug screens, and had not visited the children since November of 2017. That same month, the circuit court held a dispositional hearing and heard testimony from a DHHR worker, petitioner, and the foster mother of one of the children. Ultimately, the circuit court found that petitioner was ordered to drug screen in October of 2017 and her initial screen was positive for methamphetamine and amphetamine. Since that time, petitioner tested positive five times, tested negative five times, and failed to appear for her drug screen five times. As a result of her non-compliance, petitioner was no longer permitted to drug screen at the facility. Additionally, the circuit court found that petitioner initially participated in parenting and adult life skills classes, but lost contact with the provider which led to a suspension of these classes due to non-compliance.[2] The circuit court found that, due to petitioner's non-compliance with these services, the DHHR would be unable

---

[2]On appeal, petitioner asserts that she received parenting classes from this provider until the DHHR filed the notice to terminate her parental rights. However, petitioner cites to nothing in the record to support this assertion.

to prepare a reasonable family case plan and that petitioner's failure to participate constituted a refusal and unwillingness to improve her parenting. Most importantly, the circuit court found that petitioner did not acknowledge the faults of her parenting that caused the children to be placed in DHHR custody. Based on those findings, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected and that terminating petitioner's parental rights was in the best interest of the children. Accordingly, the circuit court denied petitioner's motion for an improvement period and terminated her parental rights in its February 2, 2018, order. Petitioner now appeals that order.[3]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in denying her motion for an improvement period. Petitioner asserts she made improvements to her home and remedied some of the conditions prior to her dispositional hearing and that she progressed without the DHHR's assistance. Further, petitioner argues that the DHHR and circuit court erroneously relied on her positive drug screens even though she was never adjudicated for substance abuse. We find no merit to petitioner's argument.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement

___

[3]The biological fathers of M.M.-1, M.M.-2, and L.L.-1 also had their respective parental rights terminated as a result of these proceedings. The father of L.L.-2 relinquished his parental rights. The biological father of B.W.-1 and B.W.-2 successfully completed an improvement period and the petition against him was dismissed. According to the parties, B.W.-1 and B.W.-2 will remain in their father's custody, while M.M-1, M.M.-2, L.L.-1, and L.L.-2 are all in separate foster placements with permanency plans of adoption in their current placements.

period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'" *In re Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004). Further, this Court has held

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)).

The circuit court did not err in denying petitioner's motion for a post-adjudicatory improvement period because she never acknowledged the issues that led to the removal of the children. Petitioner minimized and denied the physical and mental abuse that she inflicted on B.W.-1 and B.W.-2. Although petitioner indicated that she fixed issues with the home, she did not mention any change in her parenting as a result of B.W.-1 and B.W.-2's very troubling disclosures. Additionally, the circuit court found that petitioner failed to acknowledge her poor decision making in leaving the children alone and without any means to contact her in case of an emergency. Further, petitioner tested positive for controlled substances, which the circuit court found were related to the issues alleged in the petition. Petitioner argues that she admitted her substance abuse problem and requested services from the DHHR. However, petitioner presented no evidence that she took any action herself to remedy her substance abuse, even though she knew it was an issue. Finally, to be granted an improvement period, petitioner must show that she is likely to fully participate in that improvement period. The circuit court found that petitioner's services were terminated for non-compliance, which demonstrates petitioner would be unlikely to comply with further services. Accordingly, we find that the circuit court did not err in denying petitioner's motion for an improvement period.

The same evidence supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that, upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the [children]," the circuit court may terminate the parental rights of an abusing parent. Additionally, West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected occurs when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts. . . ." The circuit court correctly found that there was no reasonable likelihood that the conditions of neglect or abuse could be corrected in the near future because petitioner made no progress in solving the problems or abuse or neglect. The record shows that petitioner was non-compliant in services and continued to abuse substances even though she knew it was a serious issue. Further, petitioner did not

4

acknowledge the serious consequences that her previous actions had on her children and minimized those consequences. On appeal, petitioner acknowledges that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). Petitioner argues that it is in the best interest of the children to have a meaningful relationship with their biological parent. However, the circuit court found that it was necessary for the welfare of the children to terminate petitioner's parental rights based on her failure to acknowledge issues in her parenting and her failure to remedy those issues. We find no error with the circuit court's decision and, accordingly, find petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 2, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: October 12, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating.